ACTIEN GESELLSCHAFT APOLLINARIS BRUNNEN v. SOMBORN.

[See Apollinaris Brunnen v. Somborn, Case No. 496.]

## Case No. 33.

### The ACTIVE.

[Deady, 165.][1]

District Court, D. Oregon. March 12, 1866.

CUSTOMS DUTIES—FORFEITURES—LIBEL—EXCEPTIONS.

1. In a suit for forfeiture of a vessel under section 50 of the collection act (1 Stat. 665), it is not necessary to allege or prove that the goods unladen were of foreign growth or manufacture, but simply that they were brought in such vessel from a foreign port or place.

2. An allegation in a libel that goods were unladen from a vessel within the collection district of Oregon, is equivalent to an allegation that they were unladen within the United States; it being judicially known that such district is a part of the territory and within the limits of the United States.

3. In such suit, an allegation that the goods unladen were worth $5,000, without saying at what place, port or district, is not sufficient; but it is not necessary to allege that the unlading was at a port; any place or district within the United States is sufficient.

4. An exception, that a libel does not state facts sufficient to constitute a cause of suit or forfeiture is too general; it should state in what particular the facts are insufficient.

5. Section 50 of the act aforesaid does not apply to an unlading of goods brought from a foreign port, within the limits of the United States, but unladed before the vessel has arrived at any port or place within a collection district; such a case falls within section 27 of said act.

[In admiralty. Libel to enforce forfeiture of vessel. Dismissed.]

Joseph N. Dolph, for libellant.
David Logan, for claimant.

DEADY, District Judge. This suit is brought against the steamship Active, to enforce an alleged forfeiture thereof for a violation of section 50 of the act of March 2, 1799 (1 Stat. 665). The libel was filed October 26, 1865, and alleges that the vessel was seized by the collector of customs on that day at Portland, for the cause following: That on or about October 1, aforesaid,

the Active cleared from the foreign port of Victoria for the port of Portland, in the district of Oregon, "and on said voyage was laden with and imported and brought from the said foreign port of Victoria into the United States, as part of her cargo," goods, etc., of the value at said district of $5,000; and that after the arrival of the Active on said voyage, so laden as aforesaid, within the limits of the collection district of Oregon, to wit: the Columbia river, below the port of Astoria, on October 3, aforesaid, a part of the cargo of said vessel, of the value of $5,000, "was unladen and delivered out of said steamship before she had come to the proper place to discharge her cargo, or any part thereof," or had been authorized to unlade the same by a permit from the proper officer. On December 4, the claimant—the California Steam Navigation Company—filed exceptions to the libel for insufficiency, and upon the questions raised upon these, the case has been argued and submitted. The exceptions to the libel are five in number. All but the first one are merely technical, being founded upon the alleged insufficiency of the language of the libel to completely and absolutely express, what is apparently thereby intended.

The second exception is to the effect that the libel does not allege that the goods, etc., "were brought from any foreign port or place." The language of section 50 of the collection act, is "goods, etc., brought in any ship or vessel, from any foreign port or place." The language of the libel is—"On said voyage was laden with and imported and brought from said foreign port of Victoria," etc. Omit the words "laden with and imported," and this allegation of the libel is not only in effect the same as the language of the statute, but is actually identical with it. The addition of these words does not change the sense or force of the phrase or clause, "brought from said foreign port," but only strengthens and makes it more explicit. It is not necessary to allege that the goods are of foreign growth or manufacture, or that they should be so in fact. It is sufficient if it appears that the vessel brought the goods from a foreign port, and even, whether she first took them on in such port, is, I think, immaterial. The primary objection [object] of this and other sections of the act is to prevent frauds upon the revenue, rather than to punish persons for committing them; and to accomplish this, many acts, indifferent in themselves, but which, if permitted, might be made the means of committing, or facilitating the commission of such frauds, are prohibited under penalties. A vessel arriving in the United States from a foreign port, may have dutiable goods on board, and, therefore, she is not allowed to unlade any part of her cargo, without a permit from the proper officer of the customs. This exception is disallowed.

The third exception makes the objection,

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

that the libel does not allege that the "goods, etc., were unladen or delivered within the United States." Admitting that the libel does not contain this specific allegation, as it properly should, it contains its legal equivalent. It is alleged that the illegal unlading and delivery took place "within the limits of the collection district of Oregon, on the Columbia river, below the port of Astoria." Of whatever is established by law the court takes judicial notice, and the same need not be shown by either pleading or proof. The "collection district of Oregon" is established by act of congress, and includes the state of Oregon, which is a part of the territory, and within the limits of the United States. The allegation of the libel is therefore equivalent to a specific averment, that the unlading and delivery took place within the limits of the United States. This exception is disallowed.

The fourth exception is, that the libel does not allege that the "goods, etc., were of the value of $400 at the port or district where landed." This exception is based upon the provision in section 50, which forfeits the vessel in case the goods unladen are of the value of $400, according to the highest market price of the same, "at the port or district where landed." The libel does allege that the goods brought from the foreign port on the voyage in question, were of the value of $5,000 "at the district of Oregon," while the value of the goods illegally unladen in the district, is alleged to be worth $5,000, but without stating at what port, place or district. These allegations concerning the value of the goods do not directly, nor by necessary implication, amount to an averment as to the value of the goods unladen "at the port or district where landed." Admitting that the goods brought from the foreign port were of the value alleged, at the district of Oregon, it does not follow that the goods unladen were of such value at such district, because it is not alleged that all the goods brought into the district were unladen in it, nor can it be so presumed. The allegation, then, as to the value of the goods unladen is not helped by the one as to the goods brought, and must stand by itself; and standing alone it states the value generally and at no particular place. It may be said, however, that this general averment of value includes the particular one, that the goods unladen were of the value of $400 at the district of Oregon, and is therefore sufficient to admit the proof of the fact on the trial, or support a decree of condemnation if uncontroverted by the claimant. But this conclusion seems to be open to the objection, that of two constructions, the least natural and most favorable one to the pleader is adopted, or that an allegation which only argumentatively or by inference states the fact as to the value of the goods unladen at the port or district where unladen, is held to be equivalent to a direct and ex-

plicit averment to that effect. With these suggestions this exception is passed over.

The fifth exception is, that the libel does not allege that the "goods, etc., were landed at any port or district within the United States." That the libel does sufficiently state that the goods were landed at a district within the United States, is shown in the opinion on the third exception. But admitting that it appeared from the libel that the Active arrived within the limits of the United States, counsel for the claimant maintains that the allegation concerning the unlading of the goods does not show a delivery in contemplation of law from the vessel. The language of the act is—"shall be unladen or delivered"—and the allegation of the libel is equally explicit and comprehensive—"were unladen and delivered out of said steamship." Nothing plainer or more certain than this is necessary. It is true that the libel does not allege that the goods were unladen at any port within the United States or elsewhere. But it is not necessary that it should. It is sufficient if it appear that the unlading was at any place or district within the United States.

The first exception is the mere general objection—"that said libel does not set forth facts sufficient to constitute a cause of action or forfeiture." As a matter of form this exception is not well taken. It is a general objection, like a general demurrer at law, that the facts stated in the libel are not sufficient to cause a forfeiture. The libellant is not informed by the exception in what the insufficiency consists—what fact is lacking—and must wait until the hearing, to learn from the argument what the particular objection is, without any opportunity in the meantime to confess it, if well taken, or to meet it on the hearing by argument and authority. But for the purposes of this case, the exception may be considered sufficiently explicit. No objection has been made to it by the libellant. Besides, I remember that when this cause was before me for some purpose, I intimated to counsel for the claimant that this form of exception would be deemed sufficient. Upon this suggestion, hurriedly and inconsiderately made, the exception was doubtless drawn. Since then I have examined the elementary books on the subject, and I find the rule to be that an exception must state with reasonable certainty, the particular fact, matter, thing or omission relied on, as the case may be. With this rule reason and convenience concur. Upon the argument of this exception, counsel for the claimant made the point, that the unlading described in the libel falls within section 27 of the collection act, (1 Stat. 648,) and not within section 50 thereof. Section 27 provides for a case where goods are unladen after the vessel has arrived within the limits of a collection district of the United States, or within four leagues of the coast thereof, and before she shall

come to the proper place for the discharge of her cargo or some portion thereof, and be there duly authorized by the proper officers of the customs to unlade the same. The punishment prescribed for a violation of this section is a forfeiture of the goods so unladen, and a penalty of $1,000 against the master and the mate of the vessel; but the vessel itself is not forfeited.

The facts stated in the libel bring the case exactly within the terms of section 27; and the same may be said as to section 50, which provides, "That no goods, etc., brought in any ship or vessel from any foreign port or place, shall be unladen or delivered from such ship or vessel, within the United States, but in open day, * * * except by special license, * * * nor at any time without a permit * * * for such unlading or delivery." The punishment prescribed for a violation of this section includes the forfeiture of the vessel "when the goods at the port or district where landed are of the value of $400." Did congress intend that section 50 should be cumulative, or only to apply to the subject after the vessel had arrived at a port? Ought the two sections be construed so that the first one should apply exclusively to all illegal unladings prior to the vessel's arriving at a port, and the second one exclusively thereafter. The case turns upon the determination of this question. If section 50 is to have effect according to the natural meaning of its terms, then it overlaps section 27, and covers all cases of illegal unlading within the United States, and therefore the Active would be subject to forfeiture. But, if this section is to be restrained by construction, to an unlading which takes place after a vessel arrives at some port, upon the presumption that congress did not intend it to be cumulative and thus impose additional and different punishments for the same offence, then this case comes within section 27 alone, and the Active is not subject to forfeiture for the illegal unladng complained of.

Of the authorities cited on the argument only one is directly in point, and that is The Hunter, [Case No. 15,428.] In that case the libel alleged that the vessel "being bound from a foreign port to the United States, after her arrival within the limits of the United States, and before she had come to the proper place for the discharge of her cargo or any portion thereof, and before she was authorized to do so by the proper officer of the customs, did unlade six puncheons of distilled spirits, which were landed at a place within the jurisdiction of the court, without a permit," etc. In the district court, the facts beng found to be as alleged, sentence of condemnation passed against the vessel. On appeal to the circuit court the decree was reversed, on the ground that the case fell within section 27, and that while it was also within the letter of section 50, it did not come within the purpose or intention of such section. Mr. Justice Washington delivered the opinion of the court, and in the course of it he says: "Does section 50 meet the case laid in the libel, or refer to a vessel after her arrival at her port of discharge? The words are certainly general and broad enough, because it is stated that The Hunter had arrived within the United States. But ought not the law to be so restrained in its construction as to apply only to vessels in port? If it be not restrained, then there are two sections of the same law, on the same subject, giving double penalties for the same offense, viz: $1,000 under section 27, and $400 under section 50. The legislature may certainly do this if they please, but it is very improbable that such should be their intention. The law is then open to construction. The whole of this law previous to section 30, relates to vessels before their arrival in port, and it is clear that section 27 applies to them only in that situation. Section 30 considers them as arrived, and from that to section 49, the act regulates the conduct of the master, and the officers of the government, as to the steps preliminary to the last act to be done, viz: the permit to land the cargo. Section 49 states that the duties being paid or secured, the proper officer is authorized to grant a permit to land the cargo, which had before been reported or entered. Immediately after, and in its proper place, follows section 50, inflicting a penalty on the master and a forfeiture of the goods unladed without such permit or special license. Now, this permit cannot be granted unless a vessel has arrived at her port, nor until the previous steps required by law have been taken. * * * Section 50, then, which constitutes the crime of landing without a permit, must necessarily be confined to a landing after the vessel has reached her port of discharge, because to obtain a permit she must be in port." The case of The Hunter [Case No. 15,428] is the only direct adjudication of this question that I am aware of, and the opinion of the court contains all that can be urged in support of the defence of the claimant in this case.

Some expressions in the opinion of Mr. Justice Story in The Industry, [Case No. 7,028,] decided in 1812,—six years after The Hunter,—are in conflict with the construction given to section 50 in that case. The case was this—The Industry being bound from Havana to New York, put in to the port of Edgartown, in Martha's Vineyard, in the district of Mass. While lying there, goods exceeding $400 in value were unladen in the night from the vessel, without a permit, and put on board the brig Hannah, then lying at the same port and bound to Boston. The Industry was seized and libeled as forfeited under section 50. In the district court a decree of condemnation passed, from which an appeal was taken to the circuit court where the sentence of

condemnation was affirmed. The material difference in the facts in the case of The Industry and the one before the court is this: In the latter the illegal unlading took place after the vessel had come within the limits of the United States, but before she had arrived at any port therein, while in the former such unlading took place after the arrival of the vessel at a port within the United States, although not her port of destination and discharge. The question before the court was, should section 50 be so construed as to apply to an unlading at any port within the United States, or only at such port as might appear to be the port of ultimate destination and discharge. The court held that the case was within the terms and purview of section 50—that such section covered all cases of illegal unlading at any port within the United States, whether such port was the port of final destination and discharge or not. On the argument, it appears to have been maintained on behalf of The Industry, that the case fell within section 27, and therefore it ought not to be held to come within section 50, because that would be construing the act so as to inflict double and different punishments for the same offence. In noticing this argument, Mr. Justice Story assumes for the sake of the argument, that his conclusion was equivalent to deciding that in some cases at least, sections 27 and 50 were cumulative—applied to the same act—but denies that such conclusion ought not to be maintained for that reason alone. He says: "Nor is it sufficient to authorize a court to extract a case from the express prohibitions of one section of an act that already the same offence is punished by a different penalty in another section. If the wording of both sections clearly embrace the same case, which is to be held nugatory? I know of no principle of law that would enable me to reject either. If, therefore, it should be proved that section 50 might embrace some cases (for clearly it cannot reach all) within the prohibitions of section 27, I am not aware how I would get over the express language. I should be obliged to hold the forfeitures cumulative in such cases, unless the legislature had enabled me, by direct or constructive exceptions, to escape from such a conclusion." But how far, if at all, these sections are cumulative, the court did not expressly decide. The decision of the case turned rather upon the question whether the word "port" in section 50 should be construed to include any port within the United States at which an illegal unlading might take place, although the same was not the port of final destination or discharge. The court in The Industry not only maintains what the court in The Hunter admits, that the legislature may impose cumulative penalties upon the same act or offense, but goes farther, and, as I think, correctly, and asserts that a court is not authorized to presume that cumulative penalties were not intended by the legislature against the express words of the statute to that effect.

If, upon a consideration of the act, it satisfactorily appeared that both these sections necessarily applied to an illegal unlading within the United States, before arriving at the port of discharge and obtaining a permit, as in this case, it would be the duty of the court to enforce the law as it found it, without seeking to lengthen or shorten it by an arbitrary construction, founded upon fanciful conjectures as to what the legislature may have intended, or reasons of public policy or ideas of abstract justice. As has been shown, section 50, by its terms, expressly includes this case, which is also provided for in section 27, and the act contains no "direct exception," limiting or qualifying the force or effect of these terms. In the reason of the thing, is there to be found what in the case of The Industry the court denominated a "constructive exception" to the apparent intention of congress to make these sections cumulative? The arguments drawn from matters extraneous to the words of the statute, for and against this exception— such as public policy, the object intended to be accomplished, the impropriety of double punishments, and the like are pretty evenly balanced. The object of these and other sections of the act is to prevent frauds upon the revenue. The remedy should be broad enough to meet all cases within the mischief intended to be guarded against. Now, it is manifest, that by fixing a certain point in the voyage—as a port—where the force of section 27 is to absolutely terminate, and that of 50 only to begin, it will sometimes be so difficult to determine under which of these sections an illegal unlading should be punished, that no punishment whatever would be inflicted. When a vessel has reached a port and where she is just without it, as a matter of fact, is not always susceptible of certain proof. Astoria is near twelve miles from the bar of the Columbia river, but how far the port extends from the wharf or usual anchorage abreast of the village, is uncertain. Indeed, it may be said that as section 27 first applies to a vessel arriving within the limits of the United States, it does not cease to apply until she is not only in fact in a port, but also at the proper place for the discharge of her cargo, and has a permit so to do. The language of the section appears to be such in effect. But if section 50 does not apply until this point in the progress of the vessel is reached, then there is nothing left for it to apply to, for there is no prohibition against unlading after a permit for that purpose, unless it be in the night season, for which a special license is necessary. If these sections are to be construed as not cumulative, which is to be allowed to operate according to the ordinary

signification of its terms, and which is to be restrained or shortened so as to apply only to the cases not covered by the other?

The only consideration in favor of giving to section 27 the unrestrained operation, is the fact that in the nature of things it first applies to the subject—meeting the vessel as it does four leagues beyond the coast. But by its terms it follows the vessel until she has reached a port of discharge and obtained a permit to land her cargo. After this, as has been shown, there is practically nothing left for section 50 to apply to, and unless section 27 be restrained in some degree, the former is construed out of the statute. It follows that section 27 must be confined to cases of illegal unlading occurring between the shore line and a point four leagues at sea, or that these two sections overlap between such line and the port of discharge, or that section 50 does not apply at all—is excluded by section 27.

The matter standing thus I feel constrained to follow the authority of The Hunter, which is the only direct adjudication upon the question within my knowledge. That case was in all respects parallel to this—an illegal unlading within the limits of the United States, and before arrival at any port within such limits; and the court decided that it fell within the provisions of section 27 and not 50. The expressions of opinion in the later cases referred to,—The Industry, [Case No. 7,028;] The Betsey, [Id. 1,365;] The Harmony, [Id. 6,081,]—I think are against the soundness of that decision. But these cases were not similar to this upon the facts, and do not expressly decide the question here involved. Such expressions must be considered as only the dicta of the learned judges, made in the course of argument, and therefore not authoritative and binding precedents.

Decree, that the libel be dismissed; and an order that a certificate of reasonable cause of seizure be allowed. The facts being insufficient to cause a forfeiture according to the decision of the court this order is not granted on account of reasonable cause in fact, but the seizure being within the letter of the act, it is a case wherein a certificate ought to be granted on account of the doubt in the law. U. S. v. Riddle, 5 Cranch, [9 U. S.] 311; The Friendship, [Case No. 5,125.]